UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/12/2026
```

Monarch Partners, LLC,

                            Plaintiff,

         -v-

Gia Walsh, *individually d/b/a* GG Films, LLC,

                      Defendant.

------------------------------------------------------------------------X

24-cv-9927 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Monarch Partners, LLC ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 55, for an order granting it a default judgment against Defendant Gia Walsh, individually and d/b/a GG Films, LLC ("Defendant").  Dkt. No. 27.  The motion is unopposed.  For the following reasons, the motion for default judgment is denied.

## BACKGROUND

The Court accepts the well-pleaded allegations of the complaint as true.  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (Rule 55 "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party").  The Court also considers "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  The following facts are drawn from the Complaint, attached exhibits, and other evidence submitted by Plaintiff.

Plaintiff Monarch Partners LLC is a Nevada limited liability company with its principal place of business in Davidson County, Tennessee.  Dkt. No. 1 ¶ 2.  Its sole member is the Sanfilippo Family Trust and the sole trustees of the Sanfilippo Family Trust are Angeline

Sanfilippo and Anthony Sanfilippo, both of whom are residents of the State of Tennessee. Dkt. No. 37 ¶¶ 4-6.[1] Plaintiff is the largest investor in a film titled, "Allswell in New York" ("Allswell"). Dkt. No. 1 ¶ 3. Defendant is an individual resident of the State of New York. *Id.* ¶ 4. She was also a member of non-party Roller Coaster, LLC ("Roller Coaster"). *Id.* ¶ 11.

In October 2021, Plaintiff entered into an Investor Financing Agreement with Roller Coaster, pursuant to which Plaintiff invested $300,000.00 in Allswell. *Id.* ¶¶ 10, 12. Under the agreement, Plaintiff was entitled to receive from the gross proceeds of the Film (not including tax rebates and less outstanding loans, residuals, taxes or deferments): (i) repayment of its entire investment; (ii) a 20% return on that investment, and (iii) a pro-rata share of 50% of all distribution proceeds following repayment of principal and return. *Id.* ¶¶ 13–15; Dkt. No. 1-1 at 9–10.[2]

That same month, Plaintiff also entered into a separate Investment Agreement (the "Walsh Investment Agreement") with Defendant, dated October 6, 2021, pursuant to which in exchange for Plaintiff's investment of $300,000.00 in Allswell, GG Films agreed to invest $300,000.00 into a film called Cabin Girl or another film to be designated by Plaintiff. Dkt. No. 1 ¶ 19; Dkt. No. 1-3. The agreement was signed by Defendant as authorized signer. Dkt. No. 1-3. Defendant ultimately invested only $50,000 of the $300,000 she promised to invest. Dkt. No. 51-1 ¶ 10. Plaintiff invested another $235,000 of its own money to keep Cabin Girl afloat. Dkt. No. 1-1 ¶ 22.

Accordingly, on April 18, 2022, Plaintiff executed several additional agreements. It

---

[1] Plaintiff does not allege its citizenship in the complaint but the Court deems the complaint to be amended to include the allegations sufficient to support diversity jurisdiction. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. DuPont*, 565 F.3d 56, 64 (2d Cir. 2009); *Madden v. Unique Vacations, Inc.*, 2021 WL 11683633, at *2 (E.D.N.Y. Feb. 22, 2021).
[2] Pagination refers to ECF pagination unless otherwise indicated.

2

signed an Investment Financing Agreement with Roller Coaster pursuant to which it agreed to invest an additional $153,000 into Allswell in exchange for repayment of that value plus a return on investment of 20% and a pro rata share of the distribution proceeds.  Dkt. No. 1 ¶ 12; Dkt. No. 1-1 at 2–3.  It also signed two additional agreements with Defendant: (1) the Acknowledgment of Default and Personal Guarantee Agreement (the "Acknowledgment of Default Agreement"); and (2) the Repayment and Personal Guarantee Agreement (the "Repayment Agreement" and with the Acknowledgment of Default Agreement, the "Walsh Default Agreements").  *Id.* ¶ 21.  Under the Acknowledgment of Default Agreement, Defendant and GG Films agreed to pay Monarch $235,000.00 representing the funds Plaintiff invested in Cabin Girl on or before December 31, 2022.  *Id.* ¶ 22; Dkt. No. 1-4.  Under the Repayment Agreement, in consideration of Plaintiff's investment of another $153,000.00 in Allswell, Defendant guaranteed full repayment of Plaintiff's $453,000.00 investment (the $153,000.00 invested in that agreement and the $300,000.00 invested in the earlier October 6, 2021 Investment Agreement) if the sale of Allswell failed to generate sufficient revenue under the Investor Financing Agreement.  Dkt. No. 1 ¶ 23; Dkt. No. 1-5.

A management resolution of Roller Coaster, dated April 18, 2022, which ratified the Investor Financing Agreements, reflects that Plaintiff was to "have approval over the final budget of the Film, any proposed deal for the Film, and all other major business decisions associated with the Film," and was "to be provided with all information and documentation that it requests, including a detailed line-item accounting of financing statements for the film as updated."  Dkt. No. 1 ¶¶ 16–17.  The management resolution is signed by the two co-presidents of Roller Coaster as well as by Defendant who is identified as a "Member" of Roller Coaster and who signs for GG Films.  Dkt. No. 1-2.

On April 19, 2023, Plaintiff, through counsel, demanded repayment from Defendant pursuant to the Walsh Default Agreements.  *Id.* ¶ 24; Dkt. No. 1-6.

On August 30, 2023, Roller Coaster, through Defendant, entered into a License Agreement with Scatena & Rosner Media, LLC ("S&R"), pursuant to which it licensed exclusive distribution rights in and to the Film to S&R for fifteen years.  Dkt. No. 1 ¶ 25.  Plaintiff alleges that the Film was assigned to a third party in exchange for an unknown sum equal to or greater than $3,805,013.00 and that Roller Coaster guaranteed to a third party that the Film would produce a minimum amount of gross income equal to 130% of $3,805,013.00.  *Id.* ¶ 30; Dkt. No. 1-7.

By letter of September 19, 2023, Plaintiff demanded that Defendant pay "the full amount owed, including the $453,000, plus 20%."  Dkt. No. 1-7.  Plaintiff also demanded that Defendant pay the sum of $235,000.000 in connection with the Acknowledgment of Debt Agreement.  *Id.* A few weeks later, S&R publicly announced that it had obtained certain distribution rights for the Film.  Dkt. No. 1 ¶ 41.  However, when confronted, upon information and belief, Defendant falsely represented to Plaintiff that there was no such agreement with S&R to distribute the Film. *Id.* ¶ 42.  By letter of October 18, 2023, Plaintiff, through counsel, put S&R on notice of Plaintiff's rights under the Investor Financing Agreements.  *Id.* ¶ 43.  S&R then produced a copy of the License Agreement between it and Roller Coaster, signed by Walsh, in August 2023.  *Id.* ¶ 44.  S&R also informed Plaintiff that Defendant had falsely represented to S&R that Roller Coaster had obtained all necessary permissions to enter into the agreement for distribution of the Film.  *Id.* ¶ 46.  Plaintiff then learned that S&R had entered into one or more distribution or similar agreements related to the Film in violation of Plaintiff's approval rights.  *Id.* ¶ 48.

As a result of these events, Plaintiff was forced to file a lawsuit in Tennessee to protect its

rights.  Dkt. No. 49.  That lawsuit settled with respect to all defendants, except the Defendant in this case.  *Id.*[3]

### PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on December 27, 2024.  Dkt. No. 1. Plaintiff asserts three claims for relief: (1) breach of contract in connection with Defendant's failure to comply with the Walsh Default Agreements, *id.* ¶¶ 50–56; (2) breach of contract in connection with Walsh's failure to comply with the Walsh Investor Agreements, *id.* ¶¶ 57–62; and (3) promissory fraud, *id.* ¶¶ 63–78.

On January 9, 2025, Plaintiff filed an affirmation of service reflecting that the complaint was served on Defendant by delivering a copy of the summons and complaint to a co-tenant of suitable age and discretion at Defendant's residence in Bronxville, New York, and mailing a copy of the summons and complaint by first class mail.  Dkt. No. 6.  On February 18, 2025, Plaintiff filed a request for a clerk's certificate of default, Dkt. Nos. 7–8, and, on February 19, 2025, the clerk entered a certificate of default, Dkt. No. 10.

By notice of March 25, 2025, the Court scheduled an initial pretrial conference.  Dkt. No. 11.  On March 31, 2025, Plaintiff filed a suggestion of bankruptcy and notice of automatic stay, noting that Defendant had filed a voluntary petition under chapter 13 of the Bankruptcy Code in the United States District Court for the District of Delaware.  Dkt. No. 12.  The Court ordered Plaintiff to make a status report on July 1, 2025, and every three months thereafter.  Dkt. No. 14.

On May 22, 2025, Plaintiff informed the Court that Defendant's bankruptcy proceeding had been dismissed.  Dkt. No. 16.  By order of May 23, 2025, the Court scheduled a conference

---

[3] Plaintiff also alleges that Defendant and others engaged in a scheme to defraud the Internal Revenue Service.  Dkt. No. 1 ¶¶ 29–39.  Those allegations do not appear to be relevant to the motion for a default judgment.

for June 26, 2025. Dkt. No. 18. That order was served on Defendant by mail. Dkt. No. 19. By letter of June 18, 2025, Plaintiff informed the Court of its intent to file a motion for a default judgment in light of Defendant's failure to appear and asked that the Court adjourn the conference until the Defendant appeared in the action or until after the resolution of the prospective default motion. Dkt. No. 23. The Court granted that request by order of June 23, 2025, and directed that Plaintiff request a conference within one week of Defendant appearing in the case. Dkt. No. 25.

Plaintiff filed this motion for a default judgment on July 23, 2025. Dkt. No. 27. It also filed a memorandum of law in support of the motion, a proposed order, the declarations of Michael A. Johnson and Celena E. Stoia, and a certificate of service. Dkt. Nos. 28–32.

By order of January 20, 2026, the Court directed Plaintiff to show cause that the Court had diversity jurisdiction. Dkt. No. 33. Plaintiff responded to the order to show cause on January 23, 2026. Dkt. Nos. 36–37.

The Court held a telephonic hearing on the motion for a default judgment on February 25, 2026. Following the hearing, the Court issued an Order reserving judgment on the motion for default judgment, and permitting Plaintiff leave to file supplemental legal arguments and evidence in support of their claims for default judgment. Dkt. No. 49. That order clarifies that "[a]t the conference held February 25, 2026, Plaintiff represented that it was seeking relief only on Count One alleging breaches of the Acknowledgement of Default Agreement and the Repayment Agreement. Plaintiff presented no argument with respect to Count Two. In addition, the Court indicated it was not likely to find liability on the allegations in Count Three but would give counsel the opportunity to argue." *Id.* at 2. That order was served on Defendant. Dkt. No. 50. On March 4, Plaintiff submitted a declaration of Anthony Sanfilippo in support of its motion

6

for default judgment, Dkt. No. 51-1, and served that declaration on Defendant, Dkt. No. 52.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137. Because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Fed. R. Civ. P. 55(c), which requires a court to "weigh (1) the willfulness of default, (2) the existence of any meritorious

defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

## DISCUSSION

"Before entering a default judgment, the Court must review the complaint to determine whether plaintiff has stated a valid claim for relief." *Zim Am. Integrated Shipping Servs. Co., LLC v. Aegis Trading & Shipping Co.*, 2014 WL 5286102, at *1 (S.D.N.Y. July 23, 2014); *see also Young–Flynn v. Wright*, 2007 WL 241332, at *24 (S.D.N.Y. Jan. 26, 2007) ("A default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant, regardless of whether the defendant filed a prompt response, or any response at all.").

## I.    Monarch's Contracts with Roller Coaster

In order to understand Plaintiff's claims in the instant proceeding, it is important to understand the agreements for which they seek to establish breach, and the other contracts contained in the record.  In total, Plaintiff alleges that it invested $688,000 into Allswell and Cabin Girl.  That total is derived from the following agreements, referenced in and attached as exhibits to Plaintiff's complaint.

First, Monarch invested $300,000 in Allswell in October 2021, as memorialized in the "Investor Financing Agreement" between Monarch and Roller Coaster.  Dkt. No. 1-1 at 9–10. That agreement, as it exists in the record, is undated.  However, a distinct agreement between

8

Monarch and Walsh signed October 6, 2021, references the fact that Monarch had already agreed to invest the $300,000, indicating that the $300,000 investment was contemporaneous with or pre-dated that agreement.  Dkt. No. 1-3; *see also* Dkt. No. 1-4 (referencing the $300,000 investment in Allswell in "October 2021").[4]  In return for its investment, Monarch was promised (i) repayment of the investment, (ii) a return on investment of 20%, and (iii) a pro rata equity distribution.  Dkt. No. 1-1 at 9.  The contract explained that "[n]o return is guaranteed," as "[f]ilm production is a highly-risk investment."  *Id.*

Second, Monarch invested an additional $153,000 in Allswell on April 22, 2022, as memorialized in the "Investor Financing Agreement for Project Entitled Allswell" between Monarch and Roller Coaster.  Dkt. No. 1-1 at 2–3.  That contract contained the same terms as the earlier agreement and clarified that the right to repayment (and return and equity) was as to the entire $453,000 (the originally $300,000 invested plus the additional $153,000).  This second agreement also notes that "Roller Coaster warrants that the Investment is the total amount of money needed to complete and deliver the Film for festival screenings and/or Distribution."  *Id.* at 2.  *See also* Dkt. No. 1 ¶¶ 10, 12 (explaining that Monarch and Roller Coaster "entered into identical investor financing agreements in 2021 and 2022," and that "[p]ursuant to the Investor Financing Agreements, Monarch invested $453,000 in [Allswell]."); Ex. 51-1 at 10 (wire instructions directly to Roller Coaster, LLC).

These two contracts were signed only by Monarch and Roller Coaster.  The first is signed by Gia Walsh as a member of Roller Coaster, Dkt. No. 1-1 at 10, and the second is signed by Walsh and two other members of Roller Coaster, Ben Snyder and Ari Issler, *id.* at 3.  Roller

---

[4] Another distinct contract between Monarch and Roller Coaster dated April 22, 2022 states that the previous investment of $300,000 was "on or about October 10, 2021.")  Dkt. No. 1-1 at 2.

Coaster is not a party to this proceeding; nor does Plaintiff allege that Roller Coaster is an alter ego of Walsh or should otherwise be held liable.  In fact, Plaintiff does not seek to recover on any theory of breach as to these two contracts with Roller Coaster.

Third, Plaintiff alleges that it invested $235,000 into Cabin Girl on or before December 31, 2022.  Dkt. No. 1 ¶ 4.  The agreement pursuant to which that investment was made is not in evidence and is not before the Court.  Plaintiff does not clarify whether there was a written agreement pursuant to which that money was invested, or, if there was, which counterparty signed that agreement or what its terms were.

Beyond the three sums indicated above, Plaintiff does not allege that it put any other money into either Allswell or Cabin Girl.  Before this Court, it proceeds on contractual theories that turn on whether Walsh was contractually personally liable for those investments.

## II.    Monarch's Contracts with Walsh

### A.    The Walsh Investment Agreement

Addressing first the second count of the Complaint, Plaintiff alleges that Defendant breached the Walsh Investment Agreement.  Under that Agreement, Defendant promised to invest $300,000 into Cabin Girl, but she failed to do so.  Dkt. No. 1 ¶¶ 57–62.  The Investment Agreement, dated October 6, 2021, states that Monarch "has agreed to invest the amount certain of $300,000" into Allswell, and that "in exchange for the Monarch Film Investment," defined as the $300,000 that Monarch agreed with Roller Coaster to invest in Allswell, "GG Films has agreed to invest the amount certain of $300,000 . . . plus an additional amount to be determined in Cabin Girl."  Dkt. No. 1-3.  In its complaint, Monarch alleges that Walsh "failed to invest any money into any film designated by Monarch, let alone the $300,000 designated by Monarch."  Dkt. No. 1 ¶ 61.  However, in its most recent filing, Plaintiff acknowledges that, as is reflected in the Acknowledgement of Default of Investment Agreement and Personal Guarantee, Walsh did

in fact invest $50,000 into Cabin Girl.  Dkt. No. 51-1 ¶ 10.  In addition, and as discussed above, Plaintiff ultimately invested another $235,000 in Cabin Girl.  *Id.*  Therefore, it seeks only $15,000.00 for breach of the Investment Agreement—the remainder of the initial $300,000 investment promised by Walsh that was not ultimately funded by either party.

Plaintiff's claim under the Investment Agreement is premised on an unenforceable contract.  "To prevail on a breach-of-contract claim in New York, a plaintiff must prove: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.'"  *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 Fed. App'x 349, 350–51 (2d Cir. 2005)).  On the first question, whether a contract exists, Plaintiff alleges that the Acknowledgment of Default and Repayment Agreements are valid and enforceable contracts.  Dkt. No. 1 ¶ 51.  That is a question of law.

"To form a valid contract under New York law, there must be 'an offer, acceptance, consideration, mutual assent and intent to be bound.'"  *Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co.*, 839 F. Supp. 2d 680, 687 (S.D.N.Y. 2012) (quoting *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 680 F. Supp. 2d 384, 397 (S.D.N.Y. 2011)).  Consideration "exists where there is 'either a benefit to the promisor or a detriment to the promisee.'"  *Hollander v. Lipman*, 885 N.Y.S.2d 354, 355 (2d Dep't 2009) (quoting *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 444 (N.Y. 1982)).  "It is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him."  *Id.* (quoting *Hamer v. Sidway*, 27 N.E. 256, 257 (N.Y. 1891)).  "A promise to carry out a preexisting contractual obligation,' however, 'generally is not sufficient consideration."  *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004) (quoting 17 C.J.S.

11

Contracts § 122). That is because consideration reflects a bargained for exchange, and where one party is already obligated to perform the promise by some external source with legal force, it cannot use that obligation as the promise with which they bargain for another's performance. *See Baraliu v. Vinya Cap., LP*, 765 F. Supp. 2d 289, 298 (S.D.N.Y. 2011) ("An agreement to do something which the promisor is already required to do" is not consideration); Restatement (Second) of Contracts § 73 ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration."); *Robert L. Haag, Inc. v. Swift & Co.*, 696 F.2d 30, 31 (2d Cir. 1982) ("[I]f one party provides no enforceable consideration for the agreement, it may not enforce the agreement against the other party.").

As alleged, the only promise by Monarch in the Investment Agreement is that it made its "initial" $300,000 investment in Allswell. But Monarch was already legally obligated to invest that money in Allswell pursuant to its contract with Roller Coaster. *See* Dkt. No. 1-3 (clarifying that Walsh's promise is "in exchange for the Monarch Film Investment" of $300,000); Dkt. No. 1-1 ¶ 19 ("This agreement provides that it was in consideration of Monarch's initial investment of $300,000 into [Alswell].").  Plaintiff cannot now seek damages against Walsh's alleged breach where it provided no "independent consideration" for that contract. *DDCLAB v. E.I. DuPont De Nemours and Co.*, 2005 WL 425495, at *5 (S.D.N.Y. Feb. 18, 2005). Plaintiff has not alleged or otherwise demonstrated that it offered anything beyond that investment in exchange for Walsh's promise to invest $300,000 in Cabin Girl, and for that reason the Agreement is not an enforceable contract. *See Thales Alenia Space France v. Thermo Funding Co., LLC*, 2014 WL 3887711, at *3 (S.D.N.Y. Aug. 7, 2014) ("a promise to perform a preexisting duty cannot be valid consideration for a contract because the promisor is bound by no additional detriment, and the promise receives no additional benefit from the bargain.");

12

*Massepequa Union Free Sch. Dist. v. N.Y. State Bd. of Regents*, 2025 WL 3182580, at \*22 (E.D.N.Y. Nov. 14, 2025) ("This language may sound like a contract, but it is not," because "[w]hether measured in money, legal forbearance, or any other detriment, [the party] gives up nothing.").[5]

### B.    The Walsh Default Agreements

Turning next to the first count in the Complaint, Plaintiff alleges that Defendant violated the Walsh Default Agreements.  Dkt. No. 1 ¶¶ 50–56.  Again, those are (1) the Acknowledgement of Default of Investment Agreement and Personal Guarantee and (2) the Repayment and Personal Guarantee Agreement, both from April 18, 2022.

The Acknowledgement of Default of Investment and Personal Guarantee concerns Plaintiff's prior investments in two different films produced by Walsh and GG Films—Allswell and Cabin Girl.  The Agreement states that Allswell has finished principal photography, and that Cabin Girl has completed production.  Dkt. No. 1-4.  It explains that previously, "to aid GG FILMS in the production of Allswell," Monarch invested $300,000, and that in exchange, Walsh was to invest $300,000 in Cabin Girl.  *Id.*  The Agreement continues that "as of the date hereof, GG Films has invested only $50,000" in Cabin Girl, and that as a result Monarch "had to invest

---

[5] As noted, the Investment Agreement is dated October 6, 2021, and the Investor Financing Agreement between Monarch and Roller Coaster is undated.  The Investment Agreement explains that Monarch "has agreed" to invest $300,000, Dkt. No. 1-3, and the Complaint clarifies that it was pursuant to the Investor Financing Agreement that the money was invested to the film, Dkt. No. 1 ¶ 12, and noted that the money invested pursuant to that contract with Roller Coaster was the "initial" Monarch investment to the film, *id.* ¶ 19.  Plaintiff has not alleged the order in which the agreements were made.  Regardless, that investment cannot serve as consideration for two distinct contracts with distinct entities; Plaintiff "has not identified any separate consideration supporting" the Investment Agreement.  *DDCLAB*, 2005 WL 425495, at \*5; *see Backer v. Lewit*, 584 N.Y.S.2d 480, 482 n.1 (1st Dep't 1992) ("While we recognize that two entirely separate contracts, each based on independent consideration, may be made at the same time and be entirely distinct legally, that argument is not made here.") (citing *Williston on Contracts* § 637 (3d ed.)).

an additional $235,000" in Cabin Girl, which it defines as the "Outstanding Investment Due". *Id.* It concludes that "THEREFORE, in consideration of the mutual covenants contained herein, GG FILMS and WALSH agree to repay the Outstanding Investment Due [of $235,000] to MONARCH by December 31, 2022. GG FILMS and WALSH also agree that GG FILMS will not be repaid its Cabin Girl Investment from distribution of the CABIN GIRL until the Outstanding Investment Due is repaid to MONARCH." *Id.*

The Acknowledgment of Default of Investment and Personal Guarantee is not, as alleged, an enforceable contract. Put in plain English, the Agreement seeks to create enforceable liability as to Defendant for the $235,000 that Plaintiff invested in Cabin Girl to keep it afloat after Walsh did not invest $300,000 as she stated she would under the Investment Agreement (discussed above). Plaintiff has not provided any contract reflecting the investment of $235,000 or made any allegations with respect to such contract. The Acknowledgement does not state that at the time that investment was made, Walsh (or Roller Coaster, or GG Films) was the contractual counterparty or assumed any contractual duties to Plaintiff. Nor does it indicate what, if anything, Monarch was promised in return for that investment. The Acknowledgement references only the distinct Walsh Investment Agreement, which does not itself contain any monetary obligations flowing between Plaintiff and Defendant (and it is not evident on the basis of the pleadings what, if any, benefit flowed to Plaintiff from Defendant's promise to invest in Cabin Girl, as there is no allegation or evidence in the record that Plaintiff stood to benefit from the distribution or sale of that film). So understood, Plaintiff has not alleged that there is any consideration in the Acknowledgement and the agreements incorporated by reference tend to suggest that there was no such consideration. Per its terms, in the Acknowledgement Walsh agrees to pay Monarch $235,000 for nothing in return. That kind of promise is not enforceable.

14

*See Robert L. Haag, Inc.*, 696 F.2d at 31.[6]

The second of the two Walsh Default Agreements is the Repayment and Personal Guarantee Agreement. Dkt. No. 1-5. That Agreement states that Allswell has completed photography, and that to aid GG Films in the production of Allswell, Monarch invested $300,000 in October of 2021. It continues that in order to "aid GG FILMS in the completion of Allswell, MONARCH has agreed to invest the additional amount certain of $153,000." *Id.* It concluded that "in consideration of the mutual covenants contained herein, GG FILMS and WALSH agree to guarantee repayment of the First Allswell Film Investment and the Second Allswell Film Investment to MONARCH if the sales price of the Film does not cover the total investment amount of $453,000 . . . plus twenty percent return on investment." *Id.* As alleged, this agreement also lacks consideration. Plaintiff was contractually obligated to provide the $453,000 for the completion of Allswell. That value represents its total investment in the production of Allswell pursuant to two distinct contracts with Roller Coaster. Those contracts with Roller Coaster contain the requisite bargained for exchange—in exchange for its investment, Monarch stands to make that money back plus a sizeable return, assuming the project is successful. If there were breach of those agreements, Plaintiff's recourse would be against Roller Coaster.

The Agreement between Monarch and Walsh purports to make Walsh personally liable for the money that Monarch already invested pursuant to its agreements with Roller Coaster.

---

[6] Had Plaintiff alleged that there was a distinct agreement pursuant to which it had invested the $235,000 and Walsh would have been liable under that agreement, a subsequent promise not to sue for breach in exchange for Walsh making a distinct investment would likely be supported by adequate consideration. *See Aleph Towers, LLC v. Ambit Texas, LLC*, 2015 WL 13529957, at *2 (E.D.N.Y. 2015) ("[f]orbearance of a legal right can constitute consideration.") (collecting cases). No such allegation is made here.

15

That would be valid only if Monarch promised to do something in exchange for that promise *other* than what it already promised to do. But Monarch already promised to invest the same money that it claims as consideration for Walsh's reciprocal promises. Put differently, irrespective of what Walsh would promise or not, Monarch was liable pursuant to its contract with Roller Coaster to invest $453,000 in Allswell. In essence, Monarch sought to use that same investment to guarantee a distinct reciprocal promise. And if the contract with Walsh were to be valid, it is not clear which contract would control in the event of the movie's successful sale, as under the first contract Plaintiff is guaranteed repayment and a return on investment from Roller Coaster, and in the second it is guaranteed repayment and a return on investment as to that exact same sum from Walsh. Both cannot be true. Per Plaintiff's own allegations, the contracts are not, therefore, enforceable due to lack of consideration. *See Tierney v. Capricorn Investors, LP*, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) ("Neither a promise to do that which the promisor is already bound to do, nor the performance of an existing legal obligation constitutes valid consideration.")

## C.    Promissory Fraud

Plaintiff's third count alleges a claim for promissory fraud. Dkt. No. 1 ¶¶ 63–78. Plaintiff alleges that when Defendant entered into the Investor Financing Agreements with Roller Coaster, Defendant represented to Plaintiff that she intended to obtain Plaintiff's approval of decisions regarding the Film. *Id.* ¶ 65. She further alleges that the representation was false and material, that Defendant did not intend to obtain Plaintiff's approval, and that Plaintiff reasonably relied upon the representation. *Id.* ¶¶ 66–68. Separately, Plaintiff claims that Defendant had no intention of paying when she entered into the Walsh Default Agreements because, at the time, she did not and would not have the funds available to pay by the dates agreed upon. *Id.* ¶ 69. Plaintiff claims that it reasonably relied upon Defendant's representation

16

that she would satisfy the amounts she said that she would pay in the Walsh Default Agreements and that, as a result of Defendant's failure to satisfy her obligations, Plaintiff was forced to file the lawsuit in Tennessee and to pay attorney's fees and expenses in connection with that lawsuit. *Id.* ¶¶ 73–76.

To plead a claim for promissory fraud under New York law, a plaintiff must plead the same elements as for fraud. *See Abalu v. Soc'y of Hum. Res. Mgmt., Jennifer McCollum*, 2025 WL 1019199, at *8 (S.D.N.Y. Apr. 4, 2025); *Nourieli v. Lemonis*, 2021 WL 3475624, at *6 (S.D.N.Y. Aug. 6, 2021). The plaintiff "must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, 2016 WL 7077040, at *5 (S.D.N.Y. Dec. 5, 2016); *see N.Y.U. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) (describing the elements as "representation of a material existing fact, falsity, scienter, deception and injury" (quoting *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 151 N.E.2d 833, 835 (N.Y. 1958))). A fraud claim may be premised on a false promise, but only if the promise is made with a preconceived and undisclosed intention not to perform and is "collateral or extraneous" to any enforceable contract between the parties. *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 486–87 (S.D.N.Y., 1997) (quoting *Graal Enters. Ltd. v. Desourdy Int'l 1949 Inc.*, 1996 WL 353003, at *4 (S.D.N.Y. June 26, 1996)).

A claim for fraud or fraudulent inducement is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b). *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402–03 (2d Cir. 2015); *see PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017). Under Rule 9(b), a plaintiff must "(1) detail the statements (or omissions); (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4)

17

explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). Allegations that are "conclusory and unsupported by assertions of fact" are not sufficient to meet the Rule 9(b) standard. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Plaintiff has failed to make out a claim for promissory fraud. Plaintiff fails to plead that in October 2021 and April 2022 when Plaintiff entered into the Investment Agreements with Roller Coaster, Defendant knew that in August 2023 she would agree to a distribution deal for the Film without obtaining Plaintiff's approval. Plaintiff also fails to plead that in April 2022 when Defendant entered into the Walsh Default Agreements that Defendant had a preconceived and undisclosed intention not to perform. Plaintiff does allege that, at the time of the Walsh Default Agreements, Defendant had numerous creditors to which she owed money and numerous liens such that she eventually applied for relief under the Bankruptcy Code. Dkt. No. 1 ¶ 71. But that allegation, which is made on information and belief, does not establish that in April 2022, she knew that she would not be able to repay Plaintiff $235,000 by December 31, 2022.[7] Dkt. No. 1-4 at 2. Nor does the allegation establish that Defendant knew that she would not be able to satisfy her obligations under the Repayment Agreement, as that agreement provided a guarantee if the Film did not cover Plaintiff's investment amount of $453,000. Dkt. No. 1-5 at 2. The allegations of the complaint, however, provide no support for the notion that Plaintiff would not have fully expected the Film to cover that investment amount. Accordingly, Plaintiff is not entitled to a default judgment on the third count.

---

[7] In Plaintiff's supplemental materials, Plaintiff expands upon Walsh's bankruptcy. Dkt. No. 51-1 ¶¶ 26–28. That information, dating from April 12, 2023, does not establish that, as of a year prior, she knew she was unable to make the requisite investments and payments.

18

Having determined that Plaintiff has not established Walsh's liability under any count in the complaint, the Court has no occasion to consider damages at this juncture.

**CONCLUSION**

Plaintiff's motion for default judgment is DENIED.  Plaintiff is ordered to show cause by March 27, 2026 why the complaint should not be dismissed for failure to state a claim for relief. The Clerk of Court is respectfully requested to close Dkt. No. 27.

SO ORDERED.

Dated: March 12, 2026
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

19